UNITED STATES of America, Plaintiff,

v.

Arledt ESPINAL–CARDONA, Maria Rusbi-Cardona and Liliana Espinal-Pinzon, Defendants.

Crim. A. No. 85–402.

United States District Court,
D. New Jersey.

May 21, 1986.

---

**6.** *Berks* at 502.

**7.** 465 F.Supp. 71, 73 (S.D.N.Y.1979).

**8.** 417 F.Supp. 304, 308 (D.R.I.1976).

U.S. Atty. Thomas W. Greelish by Marianne Espinosa Murphy, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Charles M. Grossman, West Orange, N.J., for defendant Arledt Espinal-Cardona.

Ryan, Pedicini & Donnelly by Rita E. Donnelly, West Orange, N.J., for defendant Maria Rusbi-Cardona.

Herbert H. Tate, Jr., East Orange, N.J., for defendant Liliana Espinal-Pinzon.

## OPINION

GERRY, District Judge.

Presently before this court are motions by defendants Maria Rusbi-Cardona and Arledt Espinal-Cardona to suppress certain post-arrest statements that were allegedly taken in violation of their constitutional rights. The two defendants (who are mother and son) were arrested on November 5, 1985, along with Arledt Espinal-Cardona's wife, Liliana Espinal-Pinzon, at Port Newark, New Jersey. On November 8, 1985, the federal grand jury sitting in Newark returned a four count indictment naming the three defendants. Count 1 of the indictment charges all three defendants with conspiracy to violate the federal controlled substances law, 21 U.S.C. § 846. Count 2 charges all three defendants with importa-

tion of cocaine in excess of one kilogram, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) and 18 U.S.C. § 2 (aiding and abetting). Count 3 charges defendant Arledt Espinal-Cardona with use of a telephone to facilitate a drug conspiracy in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Finally, Count 4 charges all three defendants with travel in interstate commerce to facilitate a drug conspiracy, in violation of 18 U.S.C. §§ 1952 and 2.

After their arrests, both Arledt Espinal-Cardona and Maria Rusbi-Cardona made verbal statements to federal agents which are the subject of these motions. Defendant Liliana Espinal-Pinzon also allegedly made certain non-verbal responses to the agent's questions, which the Government has agreed not to introduce at trial. The defendants moved for an order suppressing the verbal statements on the ground that they were taken in violation of the defendant's constitutional rights, as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On February 18, 1986, this court held an evidentiary hearing to determine whether the defendants were deprived of their constitutional rights by the manner in which the statements were taken. After the hearing, the parties were invited to submit further briefs on the issue. We will now address the defendants' motions individually.

### 1. *Maria Rusbi-Cardona*

After her arrest on November 5, 1985, Maria Rusbi-Cardona allegedly told federal agents "the cocaine is mine, not Liliana's." She has moved to suppress that statement on the ground that the questioning that elicited it violated her Fifth Amendment rights.

At the evidentiary hearing on February 18, 1983, an agent of the Drug Enforcement Administration (DEA), Cruz Cordero, testified concerning the events that led up to Maria Rusbi-Cardona's statement. His testimony was confused and contradictory at times, apparently because he had taken no notes of the interview and had imperfect recall of the event. Cordero testified that

he had not personally been involved in the arrests, but that he had been in the DEA office when the defendants were brought in. The arresting agents asked Cordero, who is fluent in Spanish, to advise the two women of their constitutional rights in Spanish. Cordero testified that he spoke to each of the women separately. As he gave Maria Rusbi-Cardona her *Miranda* warnings, she cried and interrupted him and stated that she wanted a lawyer. Agent Cordero testified that he told her that a lawyer could be obtained for her and continued to read her *Miranda* rights.

The agent's testimony is somewhat unclear, however, as to what occurred next. At some point, either during the reading of the *Miranda* rights or immediately afterwards, Maria Rusbi-Cardona stated that if the agent "was going to ask her any question [sic] she would rather have an attorney present." (T. 28:5–7.) However, at another point, according to the agent, Maria Rusbi-Cardona indicated that she was willing to answer some questions. Cordero further testified that after the defendant indicated her willingness to talk without an attorney present, he asked her whether she knew the purpose of her trip to the Seaman's Institute. She responded, "the cocaine is mine, not Liliana's" and made several other incriminating statements. (T. 7:1–20.)

In *Miranda, supra,* the Supreme Court set forth the now familiar rule that, prior to custodial interrogation, an accused must be informed of his or her right to remain silent and his or her right to have an attorney present during questioning. Furthermore, if "the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda, supra,* at 474, 86 S.Ct. at 1627. The Court also stated that "if the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the Government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475, 86 S.Ct. at 1628.

Several recent cases have reaffirmed the holding in *Miranda* that once a person in custody requests counsel, all interrogation must cease unless and until the accused voluntarily waives this right and agrees to be questioned. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that the defendant's constitutional rights were violated when police officers returned to question him a day after he invoked his right to counsel. As the Court explained,

> ... additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards, supra,* at 484–485, 101 S.Ct. at 1884–1885.

Similarly, in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Court emphasized that the evaluation of the propriety of custodial interrogation is essentially a two-step process:

> First, courts must determine whether the accused actually invoked his right to counsel. (Citations omitted.) ... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. (Citation omitted.)

*Smith v. Illinois, supra,* 105 S.Ct. at 493.

■ Under the principles announced in these cases, we find that we must suppress Maria Rusbi-Cardona's post-arrest state-

ments. In reaching this conclusion, we find, first, that the defendant clearly and unambiguously invoked her right to counsel. *See Smith, supra,* 105 S.Ct. at 493. The record is clear that while Cordero was reading the *Miranda* rights, the defendant asked for a lawyer and stated that she wanted to have a lawyer present during questioning. (*See* T. 8:20–T. 9:15; T. 10:22–25; T. 12:7–10; T. 25:12–15; T. 26:3–7; T. 27:15–20; T. 50:18–25; T. 51:21–T. 52:2.) The Government contends that the defendant was equivocal in her request for an attorney because "[i]t was one statement which was included in a web of statements interrupting Special Agent Cordero as he attempted to give her the *Miranda* warnings." (Government's brief at 3.) This assertion, however, is belied by Cordero's testimony at the evidentiary hearing. Although Cordero's recollection was somewhat obscure on this point, it appears from his testimony that Maria Rusbi-Cardona agreed to give a statement to the police only after Cordero had finished reading the *Miranda* warnings and asked her if she would answer some questions. For example, Cordero testified as follows:

Q: (Court) . . . So, when she interrupted you and asked for an attorney, she said she'd rather have an attorney before answering any of your questions?

A: (Cordero) And I told her yes, you have—you don't have to answer any question. But then as I kept giving her rights, she said no, I will—*after I finish up them she said well, I'll tell you what happened. And that's when I asked her the purpose of being at the Seaman Institute on that day.* (Emphasis added.)

Q: So when she said she'd rather have an attorney present before answering any of your questions, you told her that she could have an attorney—

A: Yes. . . .

Q: And that she did not have to answer without an attorney?

A: Yes, I did. She understood very well when I told her that.

. . . .

Q: Was it then that she indicated she was willing to answer your questions without an attorney or was that after you had continued to a conclusion reading the *Miranda* warning?

A: As I continued to a conclusion of the *Miranda* warning.

(T. 28:1–T. 29:17.)

Later in the hearing, under questioning by the Assistant United States Attorney, Cordero indicated that Maria Rusbi-Cardona's agreement to make a statement came as a response to a direct question from Cordero:

Q: (Assistant U.S. Attorney) [A]fter that statement [on the *Miranda* card], "Do you understand," is there also a question, "Are you willing to answer some questions"?

A: Yes, ma'am.

Q: And with respect to the defendant Maria Rusbi-Cardona at this point when you asked her "are you willing to answer some questions," did she answer yes or no?

A: Yes, ma'am, as a fact she did.

(T. 44:8–14.)

Based on Cordero's testimony, we find that Maria Rusbi-Cardona did assert her right to counsel during the reading of the *Miranda* rights and only agreed to make a statement when, at the conclusion of the warning, the agent asked her if she was willing to answer some questions.

■ In *Smith, supra,* the Supreme Court was presented with a similar fact situation. In that case, the interrogating police officer had explained the *Miranda* warnings to the defendant sentence by sentence. When he informed the accused of his right to counsel, the accused responded, "Uh, yeah. I'd like to do that." The Supreme Court noted that, "Instead of terminating the questioning at this point, the interrogating officers proceeded to finish reading Smith his *Miranda* rights, and

then pressed him again to answer their questions." *Id.* 105 S.Ct. at 491–492. Smith then made some incriminating statements. The state court had held that these statements were admissible on the ground that Smith's subsequent responses to continued police questioning rendered his initial request for counsel "ambiguous." The Supreme Court disagreed, holding that "an accused's *post-request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* 105 S.Ct. at 495. Similarly, we find that the defendant Maria Rusbi-Cardona's response to a question at the conclusion of the *Miranda* warning did not render her earlier request for counsel ambiguous or equivocal. Instead, we conclude that the defendant did clearly and effectively invoke her right to counsel.

We now turn to the second phase of the inquiry; namely, whether the defendant initiated further conversation and knowingly and voluntarily waived the right she had invoked. *Smith, supra,* 105 S.Ct. at 493. The Government argues that the defendant's statement ("the cocaine is mine, not Liliana's") was not responsive to the agent's question ("what was the purpose of the trip to the Seaman's Institute?"), and therefore was not the "result" of interrogation but was "volunteered." In *Miranda, supra,* the court stated that "volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* 384 U.S. at 478, 86 S.Ct. at 1629. As noted above, however, the *Edwards* Court cautioned that special protections must be afforded a person who has invoked his right to counsel, and that statements made after a request for counsel are only admissible if the accused *initiated* the statement and voluntarily and knowingly waived his right to remain silent. *Edwards, supra,* at 484–485, 101 S.Ct. at 1884–1885.

■ Under the circumstances present in this case, we find that the defendant did not initiate the conversation leading to the incriminating statement, but rather that the statement was the product of interrogation by the federal agent. After the defendant made known her desire to have an attorney present during questioning, the federal agent did not cease the interrogation. Instead, he continued to question her, asking her whether she was willing to make a statement, and whether she knew the purpose of the visit to the Seaman's Institute. While her answer was not directly responsive to the question, it was made *in response* to the agent's continued interrogation—interrogation that ought to have ceased when the defendant requested an attorney. *Miranda, supra,* 384 U.S. at 474, 86 S.Ct. at 1627. Accordingly, we find that the defendant did not freely initiate the statement.

■ We also find that the defendant did not knowingly and voluntarily waive her constitutional rights in making her statement. The determination of whether a valid waiver occurred depends upon " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *North Carolina v. Butler,* 441 U.S. 369, 374–375, 99 S.Ct. 1755, 1757–1758, 60 L.Ed.2d 286 (1979), (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938)). From the facts adduced at the evidentiary hearing, we find that the defendant was crying and upset during the reading of the *Miranda* rights and repeatedly asked for an attorney. The agent did not promise to immediately procure one for her but put off her request (T. 50:17–T. 52:2), and then asked her if she was willing to answer questions. We find that the coercion and pressure inherent in that situation was such that the defendant did not make a knowing and voluntary waiver of her constitutional rights.

The Government has cited several cases in support of its argument that any statement made which is unresponsive to police questioning is admissible as a "volunteered" statement. We agree that such statements are admissible in certain circumstances. In *United States v. Castro,* 723 F.2d 1527 (11th Cir.1984), the court held that where the defendant responded to

the police officer's question, "What in the world is going on here?" by offering to bribe the officer, the attempted bribe was admissible as a non-responsive, volunteered statement. In the present case, however, as discussed above, we find that the defendant's statement was the involuntary product of wrongful police interrogation and therefore inadmissible under the rules set forth in *Miranda* and *Edwards*.

For the foregoing reasons, defendant Maria Rusbi-Cardona's motion to suppress certain post-arrest statements will be granted.

### 2. *Arledt Espinal-Cardona*

Defendant Arledt Espinal-Cardona has also moved to suppress certain statements made after his arrest. At the evidentiary hearing held on February 18, 1986, Special Agent John Nolan gave testimony concerning the events leading up to the post-arrest statements. He testified that, prior to advising him of his constitutional rights, he asked the defendant whether he would prefer to have the *Miranda* warnings read in English or Spanish. The defendant replied that he would prefer Spanish, and Nolan, who is fluent in Spanish, complied. Nolan then asked the defendant whether he understood his rights. The defendant answered that he did, and Nolan asked if he was willing to answer some questions. The defendant agreed. During the resulting conversation, which was conducted in English and Spanish, the defendant made the statements which are the subject of the present motion. At one point during the conversation, the defendant requested an attorney. Nolan then ceased the interrogation. Under cross-examination by the defendant's attorney, Nolan testified that he could recall no use of force or threats of force against the defendant or his family.

Based on Nolan's testimony, we find that the defendant Arledt Espinal-Cardona knowingly and voluntarily waived his constitutional right to remain silent prior to making his statements to the police. We also find that the agent properly ceased interrogation once the defendant invoked his right to counsel. Under these circumstances, we conclude that there was no violation of the defendant's rights as set forth in *Miranda, supra.* Defendant Arledt Espinal-Cardona's motion to suppress will be denied.

An order consistent with this opinion has been entered.