836 F.2d 547
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barry Keith BROOKS, Defendant-Appellant.
 No. 87-5053.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 6, 1987.
Decided Dec. 30, 1987.
 
 Anthony Wayne Bailey (Hill, Tucker & Marsh on brief) for appellant.
 N. George Metcalf, Assistant United States Attorney (Henry E. Hudson, United States Attorney, Virginia A. Adkins; Russell E. Allen, Bonnie L. Anderson, Special Assistants to United States Attorney on brief) for appellee.
 Before WIDENER, SPROUSE, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Barry Brooks appeals from his conviction after jury trial on one count of forcibly assaulting a federal officer, in violation of 18 U.S.C. Sec. 111. Brooks contends that the trial court erred in denying his motion to suppress an incriminating statement he executed on the day of the assault. We find no error in the admission of Brooks' statement, and accordingly affirm his conviction.
 
 I.
 
 2
 On September 12, 1986, Brooks was serving a sentence of imprisonment for an unrelated felony conviction at the Federal Correctional Institute in Petersburg, Virginia. On that day, he was attending classes in the institution's education building. While taking a "smoke break" in a hallway, he observed Evonne Ponder, a secretary in the education department, enter a women's rest room alone. As she attempted to leave a few minutes later, Brooks threw a coat over her head, pushed her back into the lavatory, and struggled with her in an attempt to disengage her body alarm.[1] When Ponder successfully activated the alarm, Brooks removed the coat from her head and attempted to flee the scene. Meanwhile, other prison employees had heard Ponder screaming and apprehended Brooks in the hallway outside the rest room. Ponder identified Brooks as her assailant to these employees and later to investigating officials from the institution and from the F.B.I.
 
 
 3
 An F.B.I. agent and a correctional officer questioned Brooks approximately two hours after the assault. Prior to questioning, the F.B.I. agent had informed Brooks of his rights to remain silent and to have an attorney present. Thereafter, Brooks signed a standard consent form acknowledging receipt of his rights. The F.B.I. agent then informed Brooks of Ponder's allegations and he began writing a statement outlining the details of the assault. Before the agent could complete the statement, Brooks said that he would like to call his aunt to obtain an attorney for him. At that point, the agent ripped up the partially completed statement and discarded it in the trash. The agent then informed Brooks that he would get back in touch after a lawyer was obtained. As the agent started to leave the room, however, Brooks rose from his chair, saying that he would now sign a statement. The agent returned and prepared a new statement. Brooks reviewed the second statement and signed it after correcting a spelling error. The document specifically provided that it was given "under no coercion of any kind and without any promises of any kind."
 
 
 4
 The district court held a pretrial hearing on Brooks' motion to suppress the statement. Brooks testified at the hearing that he signed it because the F.B.I. agent had promised him he would not be prosecuted in court for the assault. According to Brooks, both the agent and the correctional officer present told him that the matter would be handled exclusively through the institution's administrative processes. The F.B.I. agent testified, however, that no such promise was made. Although there had been mention of institutional proceedings during the interview, the agent had explained to Brooks that the United States Attorney would decide whether to institute a formal prosecution against him.
 
 
 5
 The district court denied Brooks' suppression motion. It discredited Brooks' testimonial account of the interview session, finding that Brooks had signed the statement voluntarily and expressly stating after trial that "the court did not believe the defendant's testimony."
 
 II.
 
 6
 In his first contention on appeal, Brooks argues that his statement should have been suppressed because it was obtained through custodial interrogation that was continued after he had invoked his right to counsel. We do not agree.
 
 
 7
 It is, of course, well-settled law that "[a]n accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him.' " Smith v. Illinois, 469 U.S. 91, 94-95 (1984) (per curiam)(quoting Edwards v. Arizona. 451 U.S. 477, 484-85 (1981)). An unheeded request for counsel, however, does not mandate automatic exclusion of all statements made after the request. A court may admit a defendant's responses to questioning after he has requested counsel, provided it finds that the defendant "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." Smith, 469 U.S. at 95.
 
 
 8
 Here, Brooks does not dispute that he was aware of his right to counsel and that, prior to any questioning, he signed a form acknowledging his awareness. The evidence also shows that the investigating officials terminated their questioning when Brooks requested permission to call his aunt for an attorney. The F.B.I. agent threw away the partial statement he had drafted and informed Brooks that he would communicate further once counsel had been obtained. The interview was resumed only after Brooks volunteered to sign a statement. Under these circumstances, we have little difficulty concluding, as did the trial court, that Brooks initiated the communication that led to the drafting of the second statement, and that Brooks knowingly and intelligently relinquished his right to have counsel present.
 
 
 9
 In his second contention, Brooks maintains that his incriminating statement was obtained in violation of the fifth amendment's proscription of compelled self-incrimination. He argues that the F.B.I. agent cajoled him into signing the statement with the promise that he would not be subject to formal prosecution. In direct conflict with Brooks' account, the agent testified that he promised Brooks nothing and that he informed him that the decision to prosecute vel non would be made by the United States Attorney. Aside from Brooks' self-serving testimony--which was discredited by the district court--there is no evidence suggesting that the statement was tainted by promises subsequently broken or by any other misconduct on the part of the investigating officials.
 
 
 10
 Although we make an independent determination of voluntariness based on the totality of circumstances, we are bound by the district court's findings as to the facts surrounding Brooks' statement unless we find that they are clearly erroneous. United States v. Locklear, 829 F.2d 1314, 1317 (4th Cir. 1987). After careful review of the record, we cannot conclude that the district court was clearly erroneous or that Brooks' statement was involuntarily given.
 
 
 11
 In view of the above, the judgment of conviction is affirmed.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Ms. Ponder and other employees at the Petersburg Federal Correctional Institute carry on their persons portable alarm devices which, when activated, emit an audible sound and alert the main control center