## SMITH v. ILLINOIS

No. 84–5332.   Decided December 10, 1984

PER CURIAM.

The petitioner Steven Smith was convicted of armed robbery and sentenced to a 9-year prison term.   He contends that the police improperly elicited a confession from him after he clearly had requested the assistance of counsel, and that

the trial court's refusal to suppress the confession therefore violated *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and *Edwards* v. *Arizona*, 451 U. S. 477 (1981). The Illinois Supreme Court held that Smith's responses to continued police questioning rendered his initial request for counsel "ambiguous," and that the officers therefore were not required to terminate their questioning. 102 Ill. 2d 365, 373–374, 466 N. E. 2d 236, 240 (1984). Under *Miranda* and *Edwards*, however, an accused's postrequest responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel. Finding no ambiguity in Smith's initial request, we accordingly grant the petition and reverse.

I

Shortly after his arrest, 18-year-old Steven Smith was taken to an interrogation room at the Logan County Safety Complex for questioning by two police detectives. The session began as follows:

> "Q. Steve, I want to talk with you in reference to the armed robbery that took place at McDonald's restaurant on the morning of the 19th. Are you familiar with this?
> "A. Yeah. My cousin Greg was.
> "Q. Okay. But before I do that I must advise you of your rights. Okay? You have a right to remain silent. You do not have to talk to me unless you want to do so. Do you understand that?
> "A. Uh. She told me to get my lawyer. She said you guys would railroad me.[1]
> "Q. Do you understand that as I gave it to you, Steve?
> "A. Yeah.

---

[1] According to the Illinois Supreme Court, the "she" that Smith referred to was an unidentified woman named Chico. 102 Ill. 2d, at 368–369, 466 N. E. 2d, at 238.

"Q. If you do want to talk to me I must advise you that whatever you say can and will be used against you in court. Do you understand that?

"A. Yeah.

"Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

"A. *Uh, yeah. I'd like to do that.*

"Q. Okay." 102 Ill. 2d, at 368–369, 466 N. E. 2d, at 238 (emphasis in opinion).

Instead of terminating the questioning at this point, the interrogating officers proceeded to finish reading Smith his *Miranda* rights and then pressed him again to answer their questions:

"Q. . . . If you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?

"A. Okay.

"Q. Do you wish to talk to me at this time without a lawyer being present?

"A. *Yeah and no, uh, I don't know what's what, really.*

"Q. Well. *You either have [to agree] to talk to me this time without a lawyer being present* and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.

"Q. All right. *I'll talk to you then.*" *Id.*, at 369, 466 N. E. 2d, at 238 (emphasis in opinion) (bracketed words appear in Tr. 230).

Smith then told the detectives that he knew in advance about the planned robbery, but contended that he had not been a participant. After considerable probing by the detectives, Smith confessed that "I committed it," but he then returned to his earlier story that he had only known about the planned crime. 102 Ill. 2d, at 369–370, 466 N. E. 2d, at 238. Upon further

questioning, Smith again insisted that "I wanta get a lawyer." *Id.*, at 370, 466 N. E. 2d, at 238. This time the detectives honored the request and terminated the interrogation.

Smith moved at trial to suppress his incriminating statements, 1 Record 45, but the trial judge denied the motion, 4 Record 231. A transcript of the interrogation was introduced as part of the State's case in chief, and Smith was convicted.

In affirming Smith's conviction, the Appellate Court of Illinois for the Fourth District acknowledged that Smith's first request for counsel "appears clear and unequivocal." 113 Ill. App. 3d 305, 310, 447 N. E. 2d 556, 559 (1983). The court concluded, however, that "when [the request] is considered with other statements—as it should be—it is clear that Smith was undecided about exercising his right to counsel" and "never made an effective request for counsel." *Id.*, at 309–310, 447 N. E. 2d, at 558–559. Rather, Smith had made "merely an indecisive inquiry into the right to counsel." *Id.*, at 310, 447 N. E. 2d, at 559.

The Illinois Supreme Court affirmed in a 4–3 vote. The majority agreed with the lower court that "Smith's statements, considered in total, were ambiguous, and did not effectively invoke his right to counsel." 102 Ill. 2d, at 373, 466 N. E. 2d, at 240. Specifically, the majority noted that although Smith stated "I'd like to do that" upon learning he had a right to his counsel's presence at the interrogation, Smith *subsequently* replied "Yeah and no, uh, I don't know what's what really," and "All right. I'll talk to you then." *Id.*, at 372, 466 N. E. 2d, at 240. In light of these subsequent remarks, the majority reasoned, "Steven Smith did not *clearly assert* his right to counsel." *Id.*, at 373, 466 N. E. 2d, at 240 (emphasis in original).

## II

An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made

available to him," unless he validly waives his earlier request for the assistance of counsel. *Edwards* v. *Arizona*, 451 U. S., at 484–485.[2] This "rigid" prophylactic rule, *Fare* v. *Michael C.*, 442 U. S. 707, 719 (1979), embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. See, *e. g.*, *Edwards* v. *Arizona, supra*, at 484–485 (whether accused "expressed his desire" for, or "clearly asserted" his right to, the assistance of counsel); *Miranda* v. *Arizona*, 384 U. S., at 444–445 (whether accused "indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking"). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards* v. *Arizona, supra*, at 485, 486, n. 9.

This case concerns the threshold inquiry: whether Smith invoked his right to counsel in the first instance. On occasion, an accused's asserted request for counsel may be ambiguous or equivocal. As the majority and dissenting opinions below noted, courts have developed conflicting standards for determining the consequences of such ambiguities. See 102

---

[2] We have repeatedly emphasized this restraint on police interrogation. In addition to *Edwards*, see also *Solem* v. *Stumes*, 465 U. S. 638, 646–647 (1984); *Oregon* v. *Bradshaw*, 462 U. S. 1039, 1044 (1983) (*Edwards* set forth a "prophylactic rule, designed to protect an accused in police custody from being badgered by police officers . . ."); *Wyrick* v. *Fields*, 459 U. S. 42, 45–46 (1982) *(per curiam); Rhode Island* v. *Innis*, 446 U. S. 291, 298 (1980); *Fare* v. *Michael C.*, 442 U. S. 707, 719 (1979) (discussing the "rigid rule" that "an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease"); *Miranda* v. *Arizona*, 384 U. S. 436, 474 (1966) ("If the individual states that he wants an attorney, the interrogation must cease until· an attorney is present"). Cf. *Michigan* v. *Mosley*, 423 U. S. 96, 105–106 (1975) (rule requiring termination of questioning upon accused's invocation of his right to silence prevents police from "persisting in repeated efforts to wear down [the accused's] resistance and make him change his mind").

Ill. 2d, at 372–373, 466 N. E. 2d, at 240; *id.*, at 375–377, 466 N. E. 2d, at 241–242 (Simon, J., dissenting).[3] We need not resolve this conflict in the instant case, however, because the judgment of the Illinois Supreme Court must be reversed irrespective of which standard is applied.

The conflict among courts is addressed to the relevance of alleged ambiguities or equivocations that either (1) *precede* an accused's purported request for counsel, or (2) are part of the request *itself*. Neither circumstance pertains here, however. Neither the State nor the courts below, for example, have pointed to anything Smith previously had said that might have cast doubt on the meaning of his statement "I'd like to do that" upon learning that he had the right to his counsel's presence.[4] Nor have they pointed to anything

---

[3] Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. See, *e. g.*, *People* v. *Superior Court*, 15 Cal. 3d 729, 735–736, 542 P. 2d 1390, 1394–1395 (1975), cert. denied, 429 U. S. 816 (1976); *Ochoa* v. *State*, 573 S. W. 2d 796, 800–801 (Tex. Crim. App. 1978). Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. See, *e. g.*, *People* v. *Krueger*, 82 Ill. 2d 305, 311, 412 N. E. 2d 537, 540 (1980) ("[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," but not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel"), cert. denied, 451 U. S. 1019 (1981). Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel. See, *e. g.*, *Thompson* v. *Wainwright*, 601 F. 2d 768, 771–772 (CA5 1979); *State* v. *Moulds*, 105 Idaho 880, 888, 673 P. 2d 1074, 1082 (App. 1983).

[4] Indeed, as Justice Simon noted in his dissent below, Smith's "only previous statement to the officer which is of any significance in this regard is an assertion that 'she' warned him that the police would 'railroad' him and advised him to get a lawyer before submitting to interrogation." 102 Ill. 2d, at 377, 466 N. E. 2d, at 242; see *supra*, at 92. Far from creating "ambiguity" concerning Smith's subsequent request, this statement could only have reinforced the clarity of Smith's invocation of his right to counsel.

inherent in the nature of Smith's actual request for counsel that reasonably would have suggested equivocation. As Justice Simon noted in his dissent below, "with the possible exception of the word 'uh' the defendant's statement in this case was neither indecisive nor ambiguous: 'Uh, yeah, I'd like to do that.'" *Id.*, at 377, 466 N. E. 2d, at 242. And the Illinois Appellate Court for the Fourth District itself acknowledged that the statement "appears clear and unequivocal." 113 Ill. App. 3d, at 310, 447 N. E. 2d, at 559.[5]

The courts below were able to construe Smith's request for counsel as "ambiguous" *only* by looking to Smith's *subsequent* responses to continued police questioning and by concluding that, "considered in total," Smith's *"statements"* were equivocal. 102 Ill. 2d, at 373, 466 N. E. 2d, at 240 (emphasis added); see also 113 Ill. App. 3d, at 310, 447 N. E. 2d, at 559.[6] This line of analysis is unprecedented and untenable. As Justice Simon emphasized below, "[a] statement either is

---

[5] JUSTICE REHNQUIST in his dissent asserts that the trial judge "implicitly concluded that petitioner's initial statement was not a clear request," *post*, at 101, and criticizes the Court for "relitigat[ing]" this "essentially factual inquiry," *post*, at 100. As this argument suggests, the trial judge did not discuss the clarity of Smith's request, but instead simply denied without comment Smith's motion to suppress. 4 Record 231. In fact, the only "finding" made by the state courts with respect to Smith's initial request was that it did indeed appear to be "clear and unequivocal." See *supra* this page.

[6] The Illinois Appellate Court for the Fourth District also suggested that it was significant that Smith's request came *during* the administration of *Miranda* warnings: "[H]e merely expressed an *interest* in obtaining counsel during the administration of the *Miranda* warnings and prior to the beginning of any interrogation. . . . Smith's statements were not a request for counsel during interrogation. Indeed, interrogation had not begun." 113 Ill. App. 3d, at 309–310, 447 N. E. 2d, at 558–559 (emphasis in original). JUSTICE REHNQUIST in his dissent similarly contends that the authorities need not stop their questioning if an accused requests counsel prior to or during the *Miranda* warnings. See *post*, at 100–101, 104. Such reasoning is plainly wrong. A request for counsel coming "at *any* stage of the process" requires that questioning cease until counsel has been provided. *Miranda* v. *Arizona*, 384 U. S., at 444–445 (emphasis added).

such an assertion [of the right to counsel] or it is not." 102 Ill. 2d, at 375, 466 N. E. 2d, at 241. Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.[7]

The importance of keeping the two inquiries distinct is manifest. *Edwards* set forth a "bright-line rule" that *all* questioning must cease after an accused requests counsel. *Solem* v. *Stumes*, 465 U. S. 638, 646 (1984). In the absence of such a bright-line prohibition, the authorities through "badger[ing]" or "overreaching"—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance. *Oregon* v. *Bradshaw*, 462 U. S. 1039, 1044 (1983); *Fare* v. *Michael C.*, 442 U. S., at 719. With respect to the waiver inquiry, we accordingly have emphasized that a valid waiver "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation." *Edwards* v. *Arizona*, 451 U. S., at 484. Using an accused's subse-

---

[7] The dissent contends that the questioning here was "entirely consistent" with the proscriptions of *Edwards* and *Oregon* v. *Bradshaw*, 462 U. S. 1039 (1983). *Post*, at 102. In those cases, the dissent argues, the authorities immediately terminated their questioning once the suspects had invoked their right to counsel, but then sought "to resume interrogation at a later time." *Ibid.* In this case, on the other hand, the detectives did not even *initially* terminate their questioning. In such circumstances, the dissent proclaims, it is proper to consider "the entire flavor of the colloquy." *Post*, at 101. To the extent the dissent suggests that an accused's Fifth Amendment right to counsel should turn on whether the authorities initially honor his request, we reject this approach as palpably untenable under *Edwards*. Whether in the same interrogating session or in subsequent sessions, the so-called "flavor" of an accused's request for counsel cannot be dissipated by continued police questioning.

quent responses to cast doubt on the adequacy of the initial request *itself* is even more intolerable. "No authority, and no logic, permits the interrogator to proceed . . . on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all." 102 Ill. 2d, at 376, 466 N. E. 2d, at 241 (Simon, J., dissenting).[8]

### III

Our decision is a narrow one. We do not decide the circumstances in which an accused's request for counsel may be

---

[8] Most of the dissent is devoted to an effort at demonstrating that the detectives did not *actually* extract Smith's confession through trickery or coercion. See *post*, at 103. This effort is of course beside the point, because the rule we announced in *Edwards* and which we follow today is a prophylactic safeguard whose application does not turn on whether coercion in fact was employed. Nevertheless, the actual course of the subsequent interrogation in this case reinforces our concern that, absent a bright-line rule requiring an immediate cessation of questioning, an accused may be "badgered" to speak as a result of police "overreaching." See *supra*, at 98. As Justice Simon noted in his dissent below:

"I fail to understand how the officer could have mistaken the defendant's meaning, and no justification is given or is apparent for his proceeding through to the end of the *Miranda* warnings and in the course of doing so misrepresenting to Smith the meaning of those warnings by the following admonition: 'You either have to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.' This communication, even if inadvertent, clearly imparted to the defendant the warning that he had to talk to the interrogator and was seriously misleading.

". . . In this regard, I find it particularly significant that Smith, who was apparently in police custody for the first time in his life and admitted that he did not 'know what's what,' agreed to talk to the police only after he was told, ostensibly by way of explaining the *Miranda* warnings, that he had no other choice." 102 Ill. 2d, at 377–378, 466 N. E. 2d, at 242.

The interrogation here bore a substantial similarity to the one condemned in *Edwards* v. *Arizona,* where the accused after requesting counsel was told that "he had" to talk to his interrogators. 451 U. S., at 479. It was precisely such "badger[ing]" that the *Edwards* safeguard was designed to prevent. See *Oregon* v. *Bradshaw, supra,* at 1044.

characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself, nor do we decide the consequences of such ambiguity or equivocation.   We hold only that, under the clear logical force of settled precedent, an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.   Such subsequent statements are relevant only to the distinct question of waiver.

Accordingly, Smith's motion for leave to proceed *in forma pauperis* is granted, the petition for a writ of certiorari is granted, the judgment of the Illinois Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and JUSTICE POWELL join, dissenting.

The Court seizes upon petitioner's seven-word response "Uh, yeah, I'd like to do that," rendered during a colloquy which in its entirety could not have taken five minutes, and proclaims that petitioner thereby clearly asserted his desire to consult with an attorney before speaking to the police.   In so doing, it decides this essentially factual inquiry contrary to the three other courts that have considered the question: the Illinois trial court, the Illinois Appellate Court, and the Supreme Court of Illinois.   Under the guise of applying a rule of law which, however correct in the abstract, has little application to these facts, the Court permits its certiorari jurisdiction to be used to relitigate the facts, and reaches a conclusion that is no more demonstrably correct than that reached by the Illinois courts.

There is no dispute that *Edwards* v. *Arizona*, 451 U. S. 477 (1981), requires *interrogation* to cease, if and when petitioner clearly asserts his right to the assistance of counsel. But here no "interrogation" was being conducted by the

police; they were simply in the process of giving petitioner his full *Miranda* warnings. The very next statement by the police officer after petitioner's "clear assertion" of his right to counsel was to tell petitioner that "[i]f you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?" Surely the police should have continued to give petitioner his full warnings, even had his earlier response had the talismanic quality that the Court attributes to it.

The Court also assumes that the statement, "Uh, yeah. I'd like to do that," was announced affirmatively and without any tone of equivocation or inquiry. As the Illinois Appellate Court observed, the officer reading petitioner his rights did not understand the statement as a clear request. After first reading petitioner the fourth *Miranda* right, he immediately sought clarification by asking petitioner pointedly, "Do you wish to talk with me at this time without a lawyer being present?" To this query, petitioner responded, "Yeah and no, uh, I don't know what's what really." The trial judge, who was able to observe the demeanor of the officers testifying as to what took place and to listen to the tape of the interrogation, implicitly concluded that petitioner's initial statement was not a clear request.

The Court asserts that subsequent statements cannot be used to call into question the clarity of an earlier "request" for counsel. It may be that a crystal-clear statement could not be rendered ambiguous by subsequent responses to questions seeking clarification. But statements are rarely that clear; differences between certainty and hesitancy may well turn on the inflection with which words are spoken, especially where, as here, a seven-word statement is isolated from the statements surrounding it. But in the ordinary give-and-take of statement and response in a colloquy such as this, I see no reason why the entire flavor of the colloquy— lasting less than five minutes—cannot be considered by the trier of fact.

*Edwards* v. *Arizona, supra,* is entirely consistent with this approach. In that case Edwards, after being informed of his *Miranda* rights, agreed to talk to police, but during his interrogation while discussing a possible "deal" said, "I want an attorney before making a deal." 451 U. S., at 478–479. The police then ceased questioning him, and he was returned to jail. The next morning two detectives went to the jail and asked to see Edwards; Edwards replied that he did not want to talk to anyone, but the guard told him that "he had" to talk and then took him to meet with the detectives. The Court said:

> "Here, the critical facts as found by the Arizona Supreme Court are that Edwards asserted his right to counsel and his right to remain silent on [the preceding day], but that the police, without furnishing him counsel, returned the next morning to confront him and as a result of the meeting secured incriminating oral admissions. Contrary to the holdings of the state courts, Edwards insists that having exercised his right on the [preceding day] to have counsel present during interrogation, he did not validly waive that right on the [next day]. For the following reasons, we agree." *Id.,* at 482.

Our other cases applying *Edwards, Oregon* v. *Bradshaw,* 462 U. S. 1039 (1983), and *Solem* v. *Stumes,* 465 U. S. 646 (1984), are cast in a similar mold; the suspect clearly asserts a right to counsel, questioning ceases, and then the police seek to resume interrogation at a later time. The facts of the present case simply do not fit that mold. The entire process by which petitioner was advised of his *Miranda* rights was transcribed in the few lines contained in the Court's opinion, *ante,* at 92–93; it simply slices a legal abstraction thinner than common sense will permit to conclude on the basis of this colloquy that it may not be used in its entirety to determine whether petitioner "clearly asserted" his right to counsel.

The Court apparently assumes that the officers were trying to trick or coerce petitioner into waiving his right to counsel. This is belied by the fact that, immediately after petitioner agreed to talk, the interrogating officer stated plainly, "All you have to do is just tell me I don't want to talk to you any more and that ends it." Subsequently, during the interrogation, when petitioner stated, "I don't want to talk to you no more. I wanta get a lawyer," the police immediately ceased questioning and complied with this request.

The Court also implies that the officers badgered and coerced petitioner into changing his mind about obtaining a lawyer. In fact, between petitioner's initial statement and his indisputable expression of uncertainty, all that the officers did was advise him of the right to appointed counsel and asked him what he wanted to do:

"A. Uh, yeah. I'd like to do that.
"Q. Okay. If you want a lawyer and if you're unable to pay for one, a lawyer will be appointed to represent you free of cost, do you understand that?
"A. Okay.
"Q. Do you wish to talk with me at this time without a lawyer being present?
"A. Yeah and no, uh, I don't know what's what really."

This can hardly be characterized as badgering.

The Court makes much of the officer's subsequent clarifying explanation that "You either have to agree to talk to me at this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop any time you want to." Tr. 230. The Court ignores the word "either." The sentence appears to be incomplete. It may well be that petitioner's response, "All right. I'll talk to you then," interrupted the completion of the sentence. The Court makes the unwarranted assumption that the officer was attempting to badger and overreach petitioner. Again, only the trier of fact can intelligently determine the import of the officer's statement.

Common sense suggests that the police should both complete reading petitioner his rights and then ask him to state clearly what he elects to do, even if he indicated a tentative desire while he was being informed of his rights. This is entirely consistent with applicable language in *Miranda* itself:

> "*Once warnings have been given, the subsequent procedure is clear.* If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda* v. *Arizona,* 384 U. S. 436, 473–474 (1966).

The reading of this short colloquy between petitioner and the police officer satisfies me that the police were faithfully attempting to follow our *Miranda* decision. The Court's opinion gives the impression that it is concerned about over-reaching, badgering, and wearing down a suspect; but no fair reading of this 5-minute transcript can lead to the conclusion that those factors were present here.