No. 85-620

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

        Plaintiff and Appellant

  -vs-

JOSEPH FLOYD RORVIK,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Ninth Judicial District,
              In and for the County of Teton,
              The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        Russell R. Andrews, Teton County Attorney, Choteau,
        Montana

    For Respondent:

        Charles M. Joslyn, Choteau, Montana

_____

              Submitted on Briefs: Sept. 25, 1986

                  Decided:  November 18, 1986

Filed:  NOV 18 1986

_____
               Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The State of Montana appeals from an order of the Ninth Judicial District Court granting defendant's motion to suppress. We reverse and remand.

During the early morning hours of January 13, 1985, a burglary occurred at the residence of Lloyd and Joanne Cunniff in Choteau, Montana. Numerous undergarments and swimsuits belonging to Joanne were stolen. The stolen items were valued at more than $300. The burglary was reported to the Teton County Sheriff's office and Ms. Cunniff informed the investigating officer that she suspected defendant.

On January 14, 1985, Deputy Sheriff William Hicks and Choteau Police Chief Anderson went to defendant's home and asked him to accompany them to the sheriff's office for an interview. Deputy Hicks desired to discuss the Cunniff burglary and Chief Anderson suspected defendant of taking a book from the Choteau library. Defendant agreed to the interview and accompanied the officers to the sheriff's office. He was not placed under arrest.

At the sheriff's office, Chief Anderson read defendant his Miranda rights and defendant signed a waiver of rights. First, Chief Anderson questioned defendant concerning the stolen library book. Deputy Hicks then questioned defendant about the Cunniff burglary. Hicks requested that defendant take a polygraph test and defendant refused. Defendant was told that there were fingerprints and footprints found at the residence which would possibly link him to the crime. These statements were untrue. Hicks pressed defendant further and suggested that he make a written statement. Defendant declined and stated he wanted to talk to an attorney.

2

Questioning continued for another few minutes then the interview was terminated.

During the next week, Chief Anderson encountered defendant on the street and on two occasions asked defendant if he had talked to his attorney. Defendant responded that he had been busy but would attempt to do so. On January 21, 1985, Chief Anderson again met defendant on the street. Defendant still had not spoken with an attorney but agreed to go to the sheriff's office for another interview. Anderson and Hicks did not question defendant, however defendant agreed at this time to submit to a polygraph test upon being assured the results could not be used as evidence.

The polygraph examination occurred in Shelby on January 23, 1985. Defendant was transported to Shelby by Deputy Hicks. Defendant signed a polygraph permission form and was advised that the test results could not be used as evidence. Following the test, the examiner informed Deputy Hicks that defendant had been deceptive on four questions. Deputy Hicks told defendant he had been untruthful and asked if he wanted to confess to the burglary. Defendant desired to give a statement so Hicks again had defendant sign a waiver of rights form.

Hicks told defendant that if he had any kind of a problem Hicks would do everything possible to see that defendant received some help. Defendant then said, "I never do this unless I'm drunk." Defendant confessed to the Cunniff burglary and also produced a gem stone he had stolen from another home in Choteau. At that point, defendant requested they return to Choteau where he would sign a written statement.

3

Pursuant to Hick's request, Hicks and defendant stopped at defendant's home to gather the evidence from the burglaries. They proceeded to the Sheriff's office where a taped interview was conducted and defendant confessed in detail to the burglaries. Following the interview, Hicks had defendant take home a written confession form to fill out, which defendant completed the following week.

Counsel was appointed for defendant. A motion to suppress was filed covering all statements made by defendant and any evidence obtained as a result of such statements. The District Court granted the motion, finding that defendant had asserted his right to counsel and that further police initiated contact violated defendant's request for counsel.

The State appeals and raises the following issue: Did the District Court err in granting defendant's motion to suppress?

The District Court concluded that defendant's request for counsel at the first interview barred further police initiated interrogation. The court cited Smith v. Illinois (1984) ___ U.S. ___, 105 S.Ct. 490, 83 L.Ed.2d 488, as being decisive of the suppression issue. A reading of Smith reveals that the rule against further questioning once a defendant has asserted his right to counsel applies to custodial interrogation. In the present case, the District Court did not address whether defendant had been subjected to custodial interrogation. Based upon the facts in the record, we find that he was not.

In State v. Dupre (1982) 200 Mont. 165, 650 P.2d 1381, we held that a custodial interrogation situation requiring Miranda warnings does not arise merely because an individual is the focus of police investigation or because questioning

4

takes place at the station house when there is no indication that freedom to depart is in any way restricted. In this instance, there is not a Miranda issue because defendant was given Miranda warnings prior to each interview with the police. Whether defendant was "in custody" depends upon whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983) 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275.

There is nothing in the record indicating defendant believed he was under arrest or was not free to leave the station house during any of the interviews. Defendant agreed to accompany the officers to the station house for the interviews and he agreed to take a polygraph test. The facts do not support defendant's assertion that he was not free to leave during the polygraph test and interview in Shelby. Defendant went to Shelby voluntarily to take the polygraph in order to clear up suspicion that he committed the Cunniff burglary. Further, during the interview following the polygraph test, defendant's request to return to Choteau was granted.

The suppression issue in this case requires analyzing two questions. First, whether defendant's confession was voluntary. Second, whether defendant made a knowing and intelligent waiver of his right to counsel. State v. Blakney (1982) 197 Mont. 131, 641 P.2d 1045. The District Court did not address the voluntariness issue. The court did address waiver, but concluded that Smith v. Illinois, supra, prohibited the police from further questioning of defendant once he had asserted his right to counsel. As noted above,

5

the Smith rule does not apply in this instance for there was no custodial interrogation.

We reverse the suppression order of the District Court and remand for hearing on the issues of voluntariness and waiver.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

I concur in the result.

_____
Justice

6