Alice Robie Resnick, J.,
dissenting. This case presents a striking example of a court taking a rational rule of law developed under a specific set of circumstances, blindly applying that rule of law to a completely dissimilar set of circumstances, and reaching a totally illogical conclusion. Consequently, because I am dismayed by the majority’s result, I dissent. I would affirm the judgment of the court of appeals, and affirm defendant’s conviction.
The court of appeals correctly concluded that the statement “We wanted to talk to you about Bobby Bennett” was not an interrogation. The appellate court properly grasped the circumstances surrounding that statement and recognized it for what it was: the mere recitation of a fact uttered by a police officer who was terminating the questioning of a suspect. This statement was in no way “reasonably likely to elicit an incriminating response” in the sense of Rhode Island v. Innis (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. The majority’s declaration that the statement “invited a response” is unsupported by the record.
In disagreeing with the court of appeals’ conclusion on the significance of this statement, the majority ignores important facts and selectively emphasizes irrelevant ones (such as police motivation in bringing defendant in for *500 questioning). Defendant’s response to the statement at issue clearly indicates that the statement cannot be accurately characterized as an interrogation. Defendant responded, “Oh, I thought you wanted to talk about the bad check warrants * * *. I don’t want to talk about the bad checks, but I will talk to you about Bobby Bennett’s death. * * * I love that man. As a matter of fact, I have got a couple theories on who may have done it that you guys would probably be interested in.”
The court of appeals correctly understood the significance of defendant’s remarks, when considered in the context of the accompanying circumstances of this case. Defendant was at one time a deputy sheriff. Testimony at trial indicated that someone had altered the firing pin and barrel of the alleged murder weapon, which was discovered in the trunk of defendant’s car, in an attempt to preclude any chance of police matching that handgun with bullets removed from the victim’s body. Clearly, defendant responded enthusiastically when the Bennett murder was mentioned. It may be easily deduced that defendant obviously believed he had outwitted the authorities, and was anxious to perfect the deception. Thus, the record reveals that the statement by the police officer referring to Bobby Bennett was not a “further interrogation.” Therefore, defendant’s response was offered voluntarily. No violation of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 36 O.O.2d 237, occurred.
The majority states that the decision in Edwards v. Arizona (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, is designed to avoid cases such as this by giving a bright-line rule to follow. However, application of the Edwards rule is dependent on an initial determination that an interrogation has occurred. Since the majority is incorrect when it finds that an interrogation occurred, its resort to the Edwards bright-line rule is likewise flawed.
It is unfathomable how the majority could find that defendant’s Miranda rights were violated in these circumstances. The majority correctly recognizes that the Edwards test “prevents the police from wearing down and confusing the defendant.” Smith v. Illinois (1984), 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488, 495-496. However, Edwards is irrelevant here. It is glaringly obvious that no intimidation of the defendant, either overt or subtle, by police occurred. Instead, defendant, a former deputy sheriff, seized upon the opportunity presented by an innocuous statement and offered unsolicited incriminatory remarks.
In conclusion, the two syllabus paragraphs are correct statements of basic hornbook law. However, the majority is mistaken when it finds that under the Innis standard, as set forth in the second syllabus paragraph, further interrogation occurred in the circumstances of this case. The majority’s *501 result is based on a skewed view of the events that took place. I vigorously dissent.