*619 KISTLER, J.,
concurring in part and concurring in the judgment.
This case arises out of an officer’s efforts to ensure that defendant understood his Miranda rights. Midway through a colloquy concerning those rights, defendant expressed uncertainty about what the admonition — that anything he said could be used against him — meant. The officer repeated the admonition, and defendant stated, “I won’t answer any questions.” The trial court recognized that defendant’s statement, viewed in isolation, appeared to be an unambiguous invocation of his right to remain silent. The trial court found, however, that, viewed in context, defendant’s invocation was ambiguous and that, in responding to it, the officer only sought to clarify defendant’s Miranda rights. Considering the entirety of the officer’s colloquy with defendant, the trial court found that defendant had not invoked his right to remain silent.
The majority reaches a different conclusion. In doing so, it does not question the conclusion the trial court reached; that is, the majority does not disagree that, if we considered the entirety of the officer’s colloquy with defendant, the trial court correctly concluded that defendant had not invoked his right to remain silent. Rather, the majority holds that, in determining whether defendant invoked his right to remain silent, a court may consider only the evidence that preceded or was contemporaneous with that invocation. Looking solely at that evidence, the majority concludes that only one conclusion is permissible: Defendant’s initial statement was an unambiguous invocation of his right to remain silent, and the statements that followed must be suppressed. The majority accordingly reverses the trial court’s judgment and remands for further proceedings.
I concur in the majority’s judgment, but my reasons for doing so differ in part from the ones that the majority gives. If the first issue that the majority decides were an open question, it might deserve more discussion than the majority gives it. As this case illustrates, the bright-line rule that the majority announces can result in suppressing a suspect’s statements when the officer merely sought to ensure that the suspect understood his rights and did nothing to *620 impair the suspect’s assertion of them.[1] However, the majority’s rule has a legitimate prophylactic effect. It helps ensure that officers will not badger or cajole suspects who invoke their Miranda rights, and it avoids potentially difficult post hoc inquiries into whether the officer’s clarifying questions went too far.
Were this an open issue, I might reach a different conclusion from the majority. After all, we frequently ask officers to make difficult, fact-specific judgment calls, and a rationale that the majority offers for the state constitutional rule that it announces — that officers need rules — rests on a premise that is inconsistent with that experience and begs the question of what the rule should be. Whatever the merit of that debate, however, the United States Supreme Court’s decision in Smith v. Illinois, 469 US 91, 105 S Ct 490, 83 L Ed 2d 488 (1984), effectively forecloses it. In that case, the Court held that, under the Fifth Amendment, only evidence that precedes or is contemporaneous with a suspect’s invocation of a Miranda right may be considered in determining whether the invocation was unambiguous. Id. at 100.[2]
*621 To be sure, defendant does not raise a Fifth Amendment claim in this case. He invokes only his rights under Article I, section 12, of the Oregon Constitution, and we are free to adopt a less stringent standard under the state constitution than the Fifth Amendment rule that the Court announced in Smith. There would be little point, however, in announcing a state constitutional rule that permits Oregon courts to consider evidence that the Fifth Amendment precludes them from considering. For that reason, I agree with the majority that, in determining whether defendant’s invocation was unambiguous, the trial court could consider only evidence that preceded or was contemporaneous with the invocation.
The remaining question is whether the evidence that preceded defendant’s invocation permitted the trial court to find his invocation ambiguous. In analyzing that issue, the majority correctly recognizes that the question whether defendant’s invocation, viewed objectively, was ambiguous can turn on, among other things, his tone of voice, the inflection of his words, any gestures that preceded or accompanied the invocation, and the tenor of the conversation that preceded the invocation. The majority also correctly recognizes that those clues to the meaning of defendant’s words are, in the first instance, questions of historical fact for the trial court. Having correctly recognized the fact-bound nature of the meaning of a person’s statements, the majority also correctly recognizes that the record in this case is not sufficient to support the conclusion that the trial court reached.
In this case, the state’s argument that defendant’s invocation was ambiguous rests on (1) the officer’s opinion, which he stated at the suppression hearing, that defendant’s invocation was more in the nature of “a question that he was pondering to me from lack of understanding” and (2) the uncertainty that defendant previously had expressed regarding Miranda rights generally and, more specifically, the meaning of the admonition that anything he said could be used against him.
*622 In my view, the difficulty for the state lies in the apparent clarity of defendant’s statement, “I won’t answer any questions.” The statement, as the officer reported it, was unconditional. Moreover, the officer did not testify at the suppression hearing to any inflection in defendant’s words or any quality in the tone of his voice that caused the officer to conclude that defendant was posing a question to him. Rather, the officer testified that he based his opinion that defendant was posing a question to him on defendant’s “lack of understanding.” And, under Smith, the only relevant evidence of defendant’s lack of understanding consists of two questions that defendant had asked the officer before defendant said, “I won’t answer any questions.” As the majority explains, neither question undercuts the significance of the words that defendant used.
Defendant posed the first question immediately after the officer read defendant his Miranda rights and asked whether he understood them. Defendant responded, “I have a question. Do I have to answer your questions?” The officer told him that he “did not have to answer any questions or talk to [the officer] if he chose [not] to [do so].” And defendant explained that he understood. Defendant’s first question provides no support for the officer’s opinion. If anything, defendant’s question and the officer’s answer imply that defendant’s subsequent invocation was unambiguous; that is, defendant chose to exercise the right to remain silent, which the officer had told him he had.
The second question occurred when the officer was going over each of the Miranda rights individually. The officer told defendant that “anything you say may be used against you in a court of law,” and defendant stated, “I don’t understand what this means.” When asked what he did not understand, defendant replied, “Anything I say can be used against me.” The officer responded, “That’s correct. Anything you say can be used against you.” At that point, defendant stated, “I won’t answer any questions.” Defendant’s statement appears to be a non sequitur. It is not apparent, however, why defendant’s uncertainty about the extent to which his statements could be used against him converts his apparent invocation of his right to remain silent into a question. If anything, defendant’s uncertainty suggests that he *623 may have been concerned that his answers — whether exculpatory or inculpatory — could be used against him and, as a result, simply chose not to “answer any questions.”
Frequently, what a person means will depend on a myriad of contextual clues, and a trial court’s explicit and implicit factual findings regarding those clues will effectively resolve the question whether a particular invocation was ambiguous. In this case, however, the trial court based its conclusion that defendant’s invocation was ambiguous on evidence that occurred after he invoked, and the evidence that preceded defendant’s invocation is not sufficient to support a finding that defendant’s words meant something other than what they said. In those circumstances, I agree with the majority’s conclusion that defendant’s invocation of the right to remain silent was unambiguous and foreclosed the state from using defendant’s subsequent answers. Accordingly, I concur in part and concur in the judgment.
Linder, J., joins this opinion concurring in part and concurring in the judgment.

 That was the situation in Smith v. Illinois, 469 US 91, 105 S Ct 490, 83 L Ed 2d 488 (1984), and it resulted in a divided Court for precisely that reason. In considering that issue, Justice Rehnquist’s dissenting opinion reasoned:
“The Court asserts that subsequent statements cannot be used to call into question the clarity of an earlier ‘request’ for counsel. It may be that a crystal-clear statement could not be rendered ambiguous by subsequent responses to questions seeking clarification. But statements are rarely that clear; differences between certainty and hesitancy may well turn on the inflection with which words are spoken, especially where, as here, a seven-word statement is isolated from the statements surrounding it. But in the ordinary give-and-take of statement and response in a colloquy such as this, 1 see no reason why the entire flavor of the colloquy — lasting less than five minutes — cannot be considered by the trier of fact.”
469 US at 101 (Rehnquist, J., dissenting).

 The officer in Smith advised the defendant of each Miranda right and then asked if he understood that right. 469 US at 92-93. Midway through that process and after being advised of his right to a lawyer, the defendant said, “Uh, yeah. I’d like to do that.” Id. at 93. The officer continued by advising the defendant that, if he wanted a lawyer and could not pay for one, a lawyer would be provided free of cost, to which the defendant replied, “Okay.” The officer then asked whether, knowing those rights, the defendant “wish[ed] to talk to [him] at this time without a lawyer being present.” Id. The defendant responded, “Yeah and no, uh, I don’t know what’s what really.” Id. The Court held that only the evidence that preceded the defendant’s response, “Uh, yeah. I’d like to do that,” could be considered in determining whether that response was an unambiguous invocation of *621 the right to a lawyer. Id. at 100. Looking only at that evidence, the Court held the invocation unambiguous.