Filed 6/16/23  P. v. Vargas CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. KEVIN VARGAS, Defendant and Appellant. | B322174 (Los Angeles Super. Ct. Case No. VA150032) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Spolin Law, Aaron Spolin and Jeremy Cutcher for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithy, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.

————————————

A jury convicted Kevin Vargas of second degree murder, fleeing a pursuing police officer causing death, hit-and-run driving resulting in death and aggravated assault on a peace officer. On appeal Vargas argues the court erred in denying his motion in limine to exclude statements made during a video-recorded custodial interview, asserting they were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). He also contends, in the alternative, the court should have admitted the entire video recording, including the portion showing him crying alone after the interview concluded. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Amended Information*

An amended information filed May 6, 2022 charged Vargas with murder (Pen. Code, § 187, subd. (a)) (count 1), fleeing a pursuing police officer causing death (Veh. Code, § 2800.3, subd. (b)) (count 2), hit-and-run driving resulting in death or serious injury (Veh. Code, § 20001, subd. (b)(2) (count 3), four counts of assault with a deadly weapon on a peace officer by means likely to produce great bodily injury (Pen. Code, § 245, subd. (c)) (counts 4, 5, 6 and 7) and two counts of misdemeanor hit-and-run driving resulting in property damage (Veh. Code, § 20002, subd. (a)) (counts 8 and 9). A number of aggravating factors were specially alleged, including that Vargas's conduct created a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)); Vargas's victims were particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)); and Vargas, who had suffered a prior misdemeanor conviction in 2018 for evading a police officer, had committed the charged offenses while on probation (Cal. Rules of Court, rule 4.421(b)(4)) and had

performed unsatisfactorily while on probation (Cal. Rules of Court, rule 4.421(b)(5)). Vargas pleaded not guilty to all counts and denied all special allegations.

2. *The Evidence at Trial*

According to the evidence at trial, while travelling in his car at a speed of 35 miles per hour, Vargas made a left turn against a red arrow, causing two other cars to stop suddenly to avoid an accident. Whittier Police Officer Jesse Garcia, who saw Vargas make the illegal turn, activated the lights and siren of his marked police car and followed Vargas with the intention of citing him for the traffic infraction.

As Officer Garcia started to follow Vargas, Vargas slammed on his brakes to avoid hitting a pickup truck travelling in the same direction. Vargas pulled next to the pickup truck and made a hand gesture with his index finger and thumb extended— roughly the shape of a gun—to the pickup driver. He made the same gesture to Officer Garcia, who had driven alongside Vargas's car. Vargas then drove in front of the pickup truck and stopped, preventing the pickup truck from moving. Vargas left his own car and began cursing at the pickup driver, accusing the driver of cutting him off and nearly killing him.

Officer Garcia got out of his patrol car and directed Vargas multiple times to stop confronting the pickup driver and to sit on the curb. Instead of obeying Officer Garcia's commands, Vargas moved toward his own car. Concerned Vargas might be attempting to retrieve a weapon, Officer Garcia remained behind the pickup truck with his firearm drawn and pointed toward the ground and again directed Vargas to stop. Officer Garcia testified he purposely placed the firearm behind the pickup truck and outside of Vargas's view.

3

Vargas ignored Officer Garcia's commands, returned to his car and sped away. He ran several red lights and stop signs, at times drove on the wrong side of the road and nearly caused several accidents. Officer Garcia pursued Vargas. Other officers became involved in the pursuit in marked police cars with their lights and sirens activated. Vargas did not pull over. He continued to drive erratically, on several occasions purposefully driving directly at the officers' vehicles, forcing them to abruptly swerve to avoid a collision. Finally, as Vargas travelled at a high rate of speed through a stop sign, his car collided in the intersection with a sports utility vehicle driven by Isais Rodriguez Cruz. Vargas's car exploded in flames on impact. Vargas managed to escape and fled on foot without stopping to check on Cruz. Vargas surrendered only when had reached a dead end, located a substantial distance from the crash site. He yelled "I'm sorry," when apprehended. Cruz died from his injuries a short time later.

The People presented evidence that Vargas had been convicted of misdemeanor evasion of police in 2018. In that incident, for which Vargas was on probation at the time he committed the charged offenses, a Huntington Beach police officer attempted to pull Vargas over for speeding after activating the lights and siren of her marked police car. Vargas failed to pull over despite a pursuit that covered more than three miles and ultimately involved 10 police cars. Vargas stopped only when his path was blocked by police.

Vargas was interviewed by Whittier Police Officer Matthew Handlen after his arrest in the case at bar. A video recording of Vargas's custodial interview was played for the jury after the court denied Vargas's motion in limine to exclude it as having

been obtained in violation of *Miranda.* Vargas acknowledged during the interview that he drove dangerously and in a manner that could have killed, and did kill, someone. He explained he had panicked after Officer Garcia appeared to target him rather than the pickup driver who had cut him off. Surveillance footage of parts of Vargas's pursuit was also played for the jury.

Vargas testified in his defense that he had not realized he had driven through a red arrow and had not seen Officer Garcia until the confrontation with the pickup driver. When Vargas finally noticed Officer Garcia, he thought the officer would help him. Instead, Officer Garcia assumed a hostile stance and unholstered his weapon, albeit pointed toward the ground. (Vargas had not mentioned in his custodial interview that Officer Garcia had drawn his weapon. His attorney argued at trial that Vargas had indicated as much with his hands during the interview.)

Vargas testified Officer Garcia had not ordered him to stop, but to return to his car, which he did. Because Vargas had not been detained, he drove away. Vargas knew he was not driving safely, but he was scared. Vargas had been on probation for a misdemeanor offense of evading police; he understood, more so since that incident, that he was supposed to stop when the lights and siren of a police car were activated; but he did not trust Officer Garcia, who appeared hostile to him during the confrontation with the pickup driver. Vargas believed the other police officers in pursuit were all working in concert with Officer Garcia and against him. He did not intend to hit any of the police officers with his car when he drove toward their vehicles. He was confused and panicked.

3. *Verdict and Sentence*

The jury found Vargas guilty on all counts and found all special allegations true. In a bifurcated proceeding after Vargas waived his right to a jury trial on the specially alleged prior misdemeanor conviction, Vargas admitted, and the court found, the prior conviction allegation true.

The court sentenced Vargas to an aggregate indeterminate state prison term of 20 years to life.[1]

## DISCUSSION

1. *The Court Did Not Err in Admitting Vargas's Custodial Statements*

   a. *Vargas's motion in limine*

Before beginning Vargas's custodial interrogation, Officer Handlen advised Vargas of his *Miranda* rights; and Vargas said he understood them.[2] The following exchange then took place:

---

[1] The court imposed the upper term of five years on count 4 (aggravated assault on a peace officer) plus 15 years to life for second degree murder. The court imposed concurrent terms of five years for each of the three remaining aggravated assault charges and four years for the felony hit-and-run offense and stayed imposition of sentence on count 2 (evading a police officer) pursuant to Penal Code section 654.

[2] Officer Handlen stated, "[Y]ou have the right to remain silent, Do you understand?" "Anything you say may be used against you in court. Do you understand?" "You have the right to the presence of an attorney before and during any questioning. Do you understand?" "If you cannot afford an attorney, one will be appointed free of charge before any questioning if you want. Do you understand all of that?" Each time Vargas was asked if he understood, he said, "Yes."

"[Officer Handlen]  Okay, do you want to talk to me about what happened today or—excuse me, it has to be yesterday?

"[Vargas]  We will talk about that, but also like, the attorney presence for any trial you said that—

"[Officer Handlen]  If you, if you desire one.

"[Vargas] Yes, I would like that.  Um—

"[Officer Handlen]  Do you want to talk to me?

"[Vargas]  Yes, I do want to talk to you.

"[Officer Handlen]  Okay.

"[Vargas]— to tell you what is going on.

"[Officer Handlen]  Okay.

"[Vargas]  I will tell you.

"[Officer Handlen]  Okay, so uh, tell me what happened yesterday."

Vargas moved in limine to exclude his statements to Officer Handlen because the questioning occurred after he had invoked his right to counsel.  The court denied the motion, finding, although Vargas had unambiguously requested counsel for trial, he had not done so for purposes of the interview with Officer Handlen.  When Officer Handlen followed up, expressly asking Vargas whether he wanted to speak to him about the incident, Vargas had said yes and answered questions.  The court ruled Vargas had impliedly waived his *Miranda* rights when he answered Officer Handlen's questions.

      b. *Governing law*

"'Under California law, issues relating to the suppression of statements made during a custodial interrogation must be reviewed under federal constitutional standards.'  [Citation.]  To protect suspects' Fifth Amendment rights, in *Miranda* [citation], the high court held that before questioning, individuals in

7

custody must be advised of their right to remain silent, that anything they say may be used as evidence against them, and that they have the right to the presence of an attorney, whether retained or appointed. [Citation.] But a suspect can waive these rights and agree to speak with law enforcement. [Citation.] The burden is on the prosecution to prove by a preponderance of the evidence that the waiver was knowing, intelligent, and voluntary, based on a totality of the circumstances." (*People v. Flores* (2020) 9 Cal.5th 371, 416-417.)

"'A valid waiver need not be of predetermined form, but instead must reflect that the suspect in fact knowingly and voluntarily waived the rights delineated in the *Miranda* decision.' [Citation.] 'A suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights.' [Citation.] The critical question with respect to waiver is whether it was knowing and voluntary, which is 'directed at an evaluation of the defendant's state of mind.'" (*People v. Flores, supra*, 9 Cal.5th at p. 417; see *Berghuis v. Thompkins* (2010) 560 U.S. 370, 384 ["[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent"]; *People v. Cunningham* (2015) 61 Cal.4th 609, 642 ["[i]n general, if a custodial suspect, having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them"].)

A suspect's invocation of the right to counsel, whether at the inception of the custodial interview after the *Miranda*

advisement has been given or after the right has been waived, must be sufficiently clear so that a reasonable law enforcement officer would understand the suspect's intent to invoke his rights under *Miranda*. (See *People v. Flores*, *supra*, 9 Cal.5th at p. 417; *People v. McCurdy* (2014) 59 Cal.4th 1063, 1087.)[3] When the defendant's assertion relating to counsel is ambiguous or equivocal, law enforcement may ask clarifying questions directed to whether the accused wishes to exercise the right or waive it. (See *People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 206 ["[t]his court has recognized that "when a suspect under interrogation makes an ambiguous statement that could be construed as an invocation of his or her *Miranda* rights, 'the interrogators may *clarify* the suspect's comprehension of, and desire to invoke or waive, the *Miranda* rights'"]; *People v. Williams* (2010) 49 Cal.4th 405, 428 [same].)

Once an accused has "'expressed his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities unless counsel has been made available to him,' unless he validly waives his earlier request" for counsel. (*Smith v. Illinois* (1984) 469 U.S. 91, 94-95; *People v. Johnson* (2022) 12 Cal.5th 544, 583.) This ban on further interrogation is intended to prevent police from """badgering a defendant into waiving his previously asserted *Miranda* rights.""" (*Johnson*, at p. 578.) A valid waiver is not

---

[3]  "The requirements for a valid waiver of rights differ from the requirements for a valid invocation of rights." (*People v. Flores, supra,* 9 Cal.5th at p. 417; see *Smith v. Illinois* (1984) 469 U.S. 91, 98 ["[i]nvocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together"].)

established merely by showing only that the accused responded to further interrogation. (*Smith*, at p. 99.)

When, as here, the trial court made no credibility or other factual findings subject to substantial evidence review, our only task is to decide independently whether the challenged statements were obtained in violation of *Miranda*. (*People v. Johnson, supra,* 12 Cal.5th at p. 578; *People v. Suarez* (2020) 10 Cal.5th 116, 158; *People v. Hensley* (2014) 59 Cal.4th 788, 809.)[4]

### c. *Vargas did not invoke his right to counsel during questioning; he waived his* Miranda *rights*

Vargas contends he did not waive his right to counsel during questioning, but expressly invoked it when he asked about counsel and stated, "I want that." Rather than honoring an obvious request to have counsel present during the interrogation, Vargas asserts, Officer Handlen continued to question him, asking, "Do you want to talk to me?" According to Vargas, that question, along with everything that followed it, was unlawful, requiring suppression of Vargas's custodial statements.

The record below belies Vargas's contention: His purported request for counsel after being given the *Miranda* advisements was far from clear. Vargas said he would talk to Officer Handlen about the incident and asked about having counsel "at trial." He was told he could have one if desired; and he replied, "I want that." Officer Handlen then followed with a

---

[4] The trial court did not hold an evidentiary hearing and made no credibility determinations. It ruled, based on the transcript of the custodial interview, that no *Miranda* violation had occurred.

10

clarifying question—"Do you want to talk to me?"—to determine whether Vargas wanted to invoke his *Miranda* right to counsel during questioning or whether he wanted to waive that right and continue the interview without an attorney present. Vargas responded "Yes," without qualification. It was only at that point, after Vargas had stated he understood his *Miranda* rights and said in response to Officer Handlen's clarifying question that he wanted to talk, that Officer Handlen began the interrogation, and Vargas proceeded to answer questions, impliedly waiving his *Miranda* rights. (See *People v. Sauceda-Contreras*, *supra*, 55 Cal.4th at p. 207; *People v. Cruz* (2008) 44 Cal.4th 636, 647; see generally *Berghuis v. Thompkins, supra*, 560 U.S. at pp. 386-387.)

Vargas's reliance on *People v. Henderson* (2020) 9 Cal.5th 1013, 1022, to argue he invoked his right to counsel before he answered any questions is misplaced. There, after initially waiving his *Miranda* rights and responding to questions during an interrogation, the defendant, in response to a question about his whereabouts, said, "'[I] want to speak to an attorney first, because I, I take responsibility for me, but there's other people that . . . .'" (*Id.* at p. 1020.) The Supreme Court held the defendant, having earlier waived his right to counsel, had unambiguously invoked it as soon as he unequivocally stated he did not want to answer until he spoke to an attorney. The Court explained the defendant's expressed reasons for wanting an attorney did not make that request ambiguous. (*Id.* at p. 1024.) Here, in contrast, the only unambiguous aspect of Vargas's request for counsel was directed to counsel at trial.

Implicitly acknowledging as much, Vargas asserts he was prevented from fully articulating his request for counsel during

11

questioning because Officer Handlen interrupted him. (Cf. *People v. Henderson, supra,* 9 Cal.5th at p. 1024 [if anything, "defendant was precluded from fully articulating his request for counsel because Officer Herrera repeatedly spoke over him"; after defendant stated he wanted an attorney because he did not want to take responsibility for others, Officer Herrera repeatedly asked what the defendant did want to take responsibility for].) Had Officer Handlen not interrupted him, Vargas asserts, he would have been able to make his request for an attorney during questioning plain.

However, in marked contrast to the interrogator in *People v. Henderson, supra,* 9 Cal.5th 1013, Officer Handlen did not repeatedly interrupt Vargas, let alone do so to ask substantive questions. Moreover, after Officer Handlen confirmed Vargas could have counsel at trial if he desired, Vargas responded with "I want that." Still uncertain whether Vargas intended to waive his *Miranda* rights, Officer Handlen again inquired whether Vargas wanted to talk to him at that time, and Vargas said yes. *Henderson,* which involved very different circumstances, does not assist Vargas.

*Smith v. Illinois, supra,* 469 U.S. 91 is also inapposite. There, immediately after advising the defendant of his *Miranda* right to counsel during questioning, the defendant responded, "'I'd like to do that.'" The United States Supreme Court found that statement, which was "'neither indecisive nor ambiguous,'" required all questioning to cease until counsel was present. (*Id.* at p. 96 [clear request for counsel could not be construed as ambiguous based on subsequent statements the suspect had made].) In arguing his case is "no different," Vargas emphasizes that he, too, had stated, in response to the *Miranda* admonition

12

about the right to counsel, "I want that." But Vargas's "I want that" referred to Officer's Handlen's response to Vargas's question about obtaining counsel at trial, a distinction Vargas does not mention, let alone address, in his appellate briefs.

In sum, Vargas's statement, "I want that," referring to the colloquy about his right to the presence of counsel at trial, was at the very least ambiguous and far from a clear invocation of his right to counsel during questioning. Accordingly, after Officer Handlen clarified whether Vargas wanted to talk to him and Vargas, who had stated he understood his *Miranda* rights, said yes, Vargas waived his *Miranda* rights. The court did not err in denying Vargas's motion in limine to exclude his custodial statements.

2. *The Court Did Not Commit Prejudicial Error in Excluding Recorded Evidence That Vargas Cried After His Interrogation Ended*

Evidence Code section 356 provides, "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given into evidence, any other act, declaration, conversation or writing which is necessary to make it understood may also be given in evidence." "In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence provided the other statements have *some bearing upon, or connection with,* the admission or declaration in evidence." (*People v. Harris* (2005) 37 Cal.4th 310, 334-335, cleaned up.)

13

Vargas contends, if the video recording of his custodial statement was properly admitted into evidence, the court erred in not permitting him, pursuant to Evidence Code section 356, to present the last part of the recording, which showed Vargas crying while alone in the interview room after the interrogation had concluded and Officer Handlen had left the room. Excluding this material was prejudicial error, Vargas contends, because it would have enabled the jury to see Vargas's upset and remorse over what had occurred.

Officer Handlen testified at trial that Vargas had cried while being questioned, and part of the recording admitted into evidence showed him crying during the interview. Even if the court erred in excluding the portion of the recording after the interview had concluded, a doubtful proposition (see *People v. Melendez* (2016) 2 Cal.5th 1, 27-28 [Evidence Code section 356 does not authorize admission of statement that fails to correct a misleading impression]), any error was harmless. Because other portions of the recording had captured substantively similar demeanor evidence, it is not reasonably probable Vargas would have received a more favorable verdict had that evidence been admitted. (See *People v. Arias* (1996) 13 Cal.4th 92, 153 [error in excluding evidence under Evidence Code section 356 evaluated under standard of prejudice for state law error articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836].)

**DISPOSITION**

The judgment is affirmed.


PERLUSS, P. J.

We concur:


FEUER, J.


ESCALANTE, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15