OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Yitzchak E. Gold, Assistant Court
Reporter.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

     The State of Ohio, Appellee, v. Knuckles, Appellant.
     [Cite as State v. Knuckles (1992),     Ohio St.3d    .]
Criminal law -- Once an accused invokes his right to counsel,
     all further custodial interrogation must cease and may not
     be resumed in the absence of counsel -- Interrogation may
     be resumed, when -- "Interrogation," defined.
1.   Once an accused invokes his right to counsel, all further
     custodial interrogation must cease and may not be resumed
     in the absence of counsel unless the accused thereafter
     effects a valid waiver or himself renews communication
     with the police.  (State v. Williams [1983], 6 Ohio St.3d
     281, 6 OBR 345, 452 N.E.2d 1323, paragraph four of the
     syllabus, followed.)
2.   When a statement, question or remark by a police officer
     is reasonably likely to elicit an incriminating response
     from a suspect, it is an interrogation.  (Rhode Island v.
     Innis [1980], 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d
     297.)
     (No. 91-1838--Submitted October 14, 1992--Decided December
15, 1992.)
     Appeal from the Court of Appeals for Butler County, No.
CA89-11-159.
     Shortly after midnight on January 31, 1989, defendant,
John C. Knuckles, Sr., was arrested on an outstanding warrant
for writing bad checks.  This arrest, however, was admittedly a
pretext for bringing him in to talk about the murder of Bobby
Bennett, for which the defendant was a suspect.  He was taken
to Hamilton police headquarters where he was given his Miranda
warning.
     The defendant, a former sheriff's deputy, acknowledged
that he understood his rights and immediately requested an
attorney.  Instead of ending the questioning, one of the three
police officers present said, "We want to talk to you about
Bobby Bennett."
     The defendant responded, "Oh, I thought you wanted to talk
about the bad check warrants * * *.  I don't want to talk about
the bad checks, but I will talk to you about Bobby Bennett's
death."  He then signed a Miranda waiver and spoke to the

police for two hours.  During this period he made incriminatory statements which assisted the police in locating evidence used against him in his trial.

The defendant was indicted for aggravated murder, aggravated robbery, tampering with evidence, and drug abuse.  A motion to suppress defendant's statements was filed, but was overruled after a suppression hearing.  A jury found the defendant guilty on all counts and he was sentenced to life imprisonment.

The Butler County Court of Appeals affirmed the conviction, finding, inter alia, that the trial court properly overruled defendant's motion to suppress.

This cause is before this court upon a motion for leave to appeal.

John F. Holcomb, Prosecuting Attorney, Daniel J. Gattermeyer and Daniel G. Eichel, Assistant Prosecuting Attorneys, for appellee.

James Kura, Ohio Public Defender, John A. Bay and Kris H. Walker, Assistant Public Defenders, for appellant.

Herbert R. Brown, J.   The single issue before the court is whether the statement "We want to talk to you about Bobby Bennett" is a "further interrogation" prohibited by Edwards v. Arizona (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Edwards and its progeny have established a bright-line test for dealing with defendants who invoke their right to counsel. Simply stated, if a defendant requests counsel, the police must stop all questioning and interrogation immediately.  Any statement, question or remark which is "reasonably likely to elicit an incriminating response" is an interrogation.  Rhode Island v. Innis (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297, 308.

Although the court of appeals correctly stated the law it erred in applying it.  The appeals court held that the statement "We wanted to talk to you about Bobby Bennett," made after the defendant had requested counsel, was not an interrogation.  For the reasons which follow, we disagree.  The the use of statements made by the defendant after his request for an attorney violated his right under the Fifth and Fourteenth Amendments (as set forth in Edwards, supra) to have counsel present during custodial interrogation.

In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct 1602, 16 L.Ed.2d 694, 36 O.O.2d 237, the United States Supreme Court held that when a defendant requests an attorney, the police must stop interrogation until an attorney is present. "Interrogation" has been defined as including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  (Footnotes omitted.)  Rhode Island v. Innis (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297, 308.  It is not necessary to phrase the communication in the form of a question to constitute an interrogation.

Once a defendant invokes his right to counsel, police may talk to him only if the defendant himself initiates further

communications. Edwards v. Arizona, supra. "This 'rigid' prophylactic rule *** embodies two distinct inquires. First, courts must determine whether the accused actually invoked his right to counsel. * * * Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on the finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." (Citations omitted.) Smith v. Illinois (1984), 469 U.S. 91, 95, 105 S.Ct. 490, 492-493, 83 L.Ed.2d 488, 493-494. This bright-line test prevents the police from wearing down and confusing the defendant to obtain a waiver of his rights. Id. at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 495-496.

The Edwards, bright-line prophylactic rule is equally applicable to "police-initiated interrogation following a suspect's request for counsel * * * in the context of a separate investigation." Arizona v. Roberson (1988), 486 U.S. 675, 682, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704, 714. Once counsel is requested, the police may not question the defendant regarding any crime until an attorney is present.[1] If they do, they violate the defendant's constitutional rights and any statements obtained cannot be used.

In the present case, the defendant, Knuckles, requested counsel immediately after the police read him his rights. At this point questioning should have stopped. However, the police "informed" Knuckles that they only wanted to talk to him about Bobby Bennett, not the bad checks charge he was arrested for. There are several factors which require the holding that the statement "We want to talk to you about Bobby Bennett" was an interrogation prohibited by Edwards.

First, the only reason Knuckles was arrested was so the police could talk to him about Bennett's murder. They had no intention of pursuing the bad checks charge. The statement was more than the "offhand remarks" in Innis, supra, 446 U.S. at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309, which were found not "reasonably likely to elicit an incriminating response." "[W]here a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect." Id., 446 U.S. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 308, fn.7.

Second, even if the arrest for the bad checks charge had not been a pretext for bringing Knuckles in to talk about Bennett's murder, the statement was still interrogatory in nature. The statement invited a response.

Finally, the rule in Edwards was adopted to avoid cases such as this. The prosecution argues the statement was made simply to advise Knuckles of the subject matter the police wanted to discuss. However, Edwards gives the police a rigid bright-line rule for dealing with suspects who have invoked their right to counsel.

As we said in State v. Williams (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, at paragraph four of the syllabus: "Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver of his right to counsel or himself renews

communication with the police."  The bright-line rule
established in these cases eliminates the need for ad hoc
determinations by the courts regarding what communications with
a defendant are permissible once counsel is requested.  It
removes uncertainty by stopping all interrogation.  It clearly
tells the police what cannot be done.

This is not to say that once a suspect requests counsel
the police may not ask routine questions necessary for
booking.  Pennsylvania v. Muniz (1990), 496 U.S. 582, 110 S.Ct.
2638, 110 L.Ed.2d 528.  But even these questions are limited.
In Muniz the court allowed questions regarding the defendant's
name, address, height, weight, eye color, date of birth, and
current age.  It did not allow a question asking the date of
the defendant's sixth birthday.  The statement made to
Knuckles, after he had asked for counsel, was not a routine
booking question.

Accordingly, we hold that the statement "We want to talk
to you about Bobby Bennett" was an interrogation prohibited by
Edwards.  The judgment of the court of appeals is reversed and
the cause is remanded.

> Judgment reversed
> and cause remanded.

Moyer, C.J., Sweeney, Douglas and Wright, JJ., concur.
Holmes and Resnick, JJ., separately dissent.


FOOTNOTE
1  The court of appeals cited McNeil v. Wisconsin (1991)
501 U.S.    , 111 S.Ct. 2204, 115 L.Ed.2d 158, for the
proposition that a request for counsel is offense-specific.
McNeil concerns the Sixth Amendment right to have counsel
present at adversarial hearings.  The case before us deals with
the Fifth Amendment right to have counsel present during
interrogation to guard against self-incrimination.  McNeil is
not applicable to this case.


Holmes, J., dissenting.  Although I am in agreement with
the law as stated in the syllabus of this opinion, I
respectfully dissent because of the majority's failure to
properly apply the law to the facts of the instant appeal.

As correctly stated at the outset of the majority's
opinion, the crucial issue for our discussion is whether
appellant was subjected to "interrogation" within the meaning
of Rhode Island v. Innis (1980), 446 U.S. 291, 100 S.Ct. 1682,
64 L.Ed.2d 297.  There, the United States Supreme Court
construed "interrogation" more broadly than meaning police
questioning of the suspect.  The Fifth Amendment privilege
against compulsory self-incrimination could not adequately be
safeguarded unless law enforcement officials were also
prohibited from conduct which amounted to the "functional
equivalent" of express questioning.  Accordingly, the court
held: "[T]he definition of interrogation can extend only to
words or actions on the part of police officers that they
should have known were reasonably likely to elicit an
incriminating response."  (Emphasis sic.)  Id. at 302, 100
S.Ct. at 1690, 64 L.Ed.2d at 308.

The Innis court, in finding that no interrogation took
place, rejected any definition of "interrogation" which focused

exclusively on the existence of police compulsion, however subtle it may have been.2  However, the suspect's response must, in addition, have been "the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response."  Id. at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309.  If the suspect's statements were not evoked as a result of police compulsion, then the second prong of the definition of "interrogation" has not been satisfied.  In other words, we must look to the reasonable perceptions of the suspect in determining whether he or she was subjected to "interrogation."  If a suspect would reasonably feel that the police conduct or words did not call for a response, no interrogation can be said to have taken place.

I am confused and troubled that the majority has chosen to characterize the statement "We wanted to talk to you about Bobby Bennett" as an interrogation.  This statement was not a question, nor can it be considered to be the functional equivalent of express questioning.  Nothing in this remark could have been reasonably perceived by appellant (a forty-two-year-old former deputy sheriff) as calling for a response, let alone a waiver of Miranda rights and the initiation of his subsequent conversation.  Moreover, there is ample evidence in the record which strongly suggests that appellant welcomed this comment as an opportunity to mislead the police investigation through his deceptive theories on who shot the victim.  Appellant's subsequent incriminating remarks were more likely evoked by his desire to lead the police astray than they were by his perception that the officer wanted him to speak.  In this sense, the comment did strike a "responsive chord," thereby permitting appellant to say what he wanted about his version of the Bennett murder.

What the majority characterizes as a "bright-line rule" emanating from Innis and its progeny is, in effect, the inevitable result of the majority's misapplication of the nuances of the constitutional privilege against compulsory self-incrimination.  The majority goes far beyond safeguarding this privilege by unnecessarily crafting what amounts to an anticommunication obligation on the part of police officers.  By this reasoning, any communication other than that usually attendant to arrest and custody will amount to "interrogation."  Also, by this reasoning, the forseeability of the incriminating response is irrelevant--what matters is only that the arrestee began to talk.

Accordingly, I would affirm the court of appeals.


FOOTNOTE:
2  See Innis, at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309:
"The Rhode Island Supreme Court erred, in short, in equating 'subtle compulsion' with interrogation.  That the officers' comments struck a responsive chord is readily apparent.  Thus, it may be said, as the Rhode Island Supreme Court did say, that the respondent was subjected to 'subtle compulsion.'  But that is not the end of the inquiry.  It must also be established that a suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an

incriminating response.  This was not established in the present case."  (Emphasis added.)

Alice Robie Resnick, J., dissenting.  This case presents a striking example of a court taking a rational rule of law developed under a specific set of circumstances, blindly applying that rule of law to a completely dissimilar set of circumstances, and reaching a totally illogical conclusion.  Consequently, because I am dismayed by the majority's result, I dissent.  I would affirm the judgment of the court of appeals, and affirm defendant's conviction.

The court of appeals correctly concluded that the statement "We wanted to talk to you about Bobby Bennett" was not an interrogation.  The appellate court properly grasped the circumstances surrounding that statement and recognized it for what it was:  the mere recitation of a fact uttered by a police officer who was terminating the questioning of a suspect.  This statement was in no way "reasonably likely to elicit an incriminating response" in the sense of Rhode Island v. Innis (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297.  The majority's declaration that the statement "invited a response" is unsupported by the record.

In disagreeing with the court of appeals' conclusion on the significance of this statement, the majority ignores important facts and selectively emphasizes irrelevant ones (such as police motivation in bringing defendant in for questioning).  Defendant's response to the statement at issue clearly indicates that the statement cannot be accurately characterized as an interrogation.  Defendant responded, "Oh, I thought you wanted to talk about the bad check warrants * * *. I don't want to talk about the bad checks, but I will talk to you about Bobby Bennett's death.  * * * I love that man.  As a matter of fact, I have got a couple theories on who may have done it that you guys would probably be interested in."

The court of appeals correctly understood the significance of defendant's remarks, when considered in the context of the accompanying circumstances of this case.  Defendant was at one time a deputy sheriff.  Testimony at trial indicated that someone had altered the firing pin and barrel of the alleged murder weapon, which was discovered in the trunk of defendant's car, in an attempt to preclude any chance of police matching that handgun with bullets removed from the victim's body. Clearly, defendant responded enthusiastically when the Bennett murder was mentioned.  It may be easily deduced that defendant obviously believed he had outwitted the authorities, and was anxious to perfect the deception.  Thus, the record reveals that the statement by the police officer referring to Bobby Bennett was not a "further interrogation."  Therefore, defendant's response was offered voluntarily.  No violation of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 36 O.O.2d 237, occurred.

The majority states that the decision in Edwards v. Arizona (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, is designed to avoid cases such as this by giving a bright-line rule to follow.  However, application of the Edwards rule is dependent on an initial determination that an interrogation has occurred.  Since the majority is incorrect when it finds that

an interrogation occurred, its resort to the Edwards bright-line rule is likewise flawed.

It is unfathomable how the majority could find that defendant's Miranda rights were violated in these circumstances.  The majority correctly recognizes that the Edwards test "prevents the police from wearing down and confusing the defendant."  Smith v. Illinois (1984), 696 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488, 495-496.  However, Edwards is irrelevant here.  It is glaringly obvious that no intimidation of the defendant, either overt or subtle, by police occurred.  Instead, defendant, a former deputy sheriff, seized upon the opportunity presented by an innocuous statement and offered unsolicited incriminatory remarks.

In conclusion, the two syllabus paragraphs are correct statements of basic hornbook law.  However, the majority is mistaken when it finds that under the Innis standard, as set forth in the second syllabus paragraph, further interrogation occurred in the circumstances of this case.  The majority's result is based on a skewed view of the events that took place.  I vigorously dissent.