JOINER, Judge,
dissenting.
I respectfully dissent. In my view, the circuit court erroneously failed to suppress Corey Allen Wimbley’s statement, and I believe that the erroneous admission of Wimbley’s statement was not harmless beyond a reasonable doubt. Therefore, I would reverse Wimbley’s ■ convictions' and death sentence.
Initially, I note my disagreement with the main opinion’s analysis of whether a violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), occurred. Specifically, I disagree with the inairi opinion’s statement that
“[u]nder an Edwards analysis, after an accused individual in police custody has invoked his right to counsel and later gives a statement, the only question for ’ the court is whether the accused initiated the discussion about the investigation of his crime. [Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983).] If the accused did, then the Edwards inquiry stops and the prophylactic rule [of Edwards ] does not apply. Id. An Edwards analysis does not involve determining whether the defendant knowingly and voluntarily waived’ his- right to counsel and gave his statement. Id.”
191 So.3d at 200. This statement — particularly the last sentence — conflicts with the main opinion’s earlier recognition that the second “inquiry” of thEdwards analysis involves two components: whether the accused initiated additional'discussions'with the police and whether he knowingly and intelligently waived the right to' counsel that he had invoked. 191 So.3d- at 199 (“““Second, if the accused invoked his right to counsel,. courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly ancl intelligently waived the right he had invoked. Edwards v. Arizona, supra, [451 U.S.,] at 485, 486, n. 9.’ ” ’. ” (quoting Phillips v. State, 65 So.3d 971, 1020 (Ala.Crim.App.2010), quoting in turn Eggers v. State, 914 So.2d 883, 899-900 (Ala.Crim.App.2004), quoting in turn Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984))).
*256 The main opinion, as noted, cites Oregon v. Bradshaw, 462 U.S. 1039, 1046, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), in support of its later assertion that the Edwards analysis “does not involve determining whether the defendant knowingly and voluntarily waived his right to counsel and gave his statement.” 191 So.3d at 200. I do not believe, however, that this is a correct application of Bradshaw. In Bradshaw, the United States Supreme Court rejected the notion that “an ‘initiation’ of a conversation or discussion by an accused not only satisfied the Edwards rule, but ex proprio vigore sufficed to show a waiver of the previously asserted right to counsel.” Bradshaw, 462 U.S. at 1045. Immediately following that statement, the Supreme Court noted: “The inquiries are separate, and clarity of application is not gained by melding them together.”
Thus, the Supreme Court in Bradshaw was not holding, as the main opinion suggests, that a finding of initiation by the accused ends the Edwards inquiry. Rather, the Bradshaw decision rejected an automatic finding of a voluntary waiver of the right to counsel upon a finding of initiation of discussions with law enforcement by the accused.
In’ Wimbley’s case, it is clear that he initiated contact with law enforcement. That initiation, however, does not end the Edwards inquiry. Wimbley’s clearly stated reason for doing so was to' get out of “the hole” and into the “general population” because he “couldn’t take it.” Although the main opinion discounts Wim-bley’s statements regarding the conditions in “the hole,” the State did not offer evidence regarding those conditions. Indeed, when questioned about Wimbley’s description of the conditions, Deputy Ferrell Grimes testified that he did not know if those descriptions were accurate. Regardless, Wimbley’s perception of those conditions was such that it took only four days for him to backtrack from his assertion of his constitutional right to counsel and initiate contact with law enforcement.
.¡Under the totality of the circumstances here, I think the sole reason Wimbley gave for initiating contact with the police — to get out of “the hole” — is inextricably intertwined with and bears on whether he voluntarily waived his previously asserted right to counsel and whether his statement was involuntarily made as a result of police coercion. Indeed, after Wimbley gave his initial statement in which he did not admit involvement in the crimes, the officers continued to press Wimbley, specifically insisting that if he wanted to get out of “the hole” — that is, if he wanted to have his sole condition for talking to the officers met— he needed to “tell ... the truth, the whole truth,” which, Deputy Grimes insisted, was a version of events that involved Wim-bley’s participation in the crimes.
Although Wimbley initiated the contact with law- enforcement, .under these circumstances T would hold that his waiver of his constitutional right to counsel was involuntary, as was his subsequent confession to participating in the crimes. Accordingly, I dissent.